UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
IRVING LANGER,

                       Plaintiff,

          -against-

PAYSAFE PARTNERS LP,

                      Defendant.
-----------------------------------------------------------------X
PAYSAFE PARTNERS LP,

                 Counterclaim-Plaintiff,

          -against-

IRVING LANGER, SAM SCHWED, PHILIP GREEN,
and KEVIN WEILER,

               Counterclaim-Defendants.
-----------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
CV 19-4388 (JMA)(AYS)

**ANNE Y. SHIELDS, United States Magistrate Judge:**

      Before the Court, on referral from the Honorable Joan M. Azrack for report and

recommendation, are three separate motions by Counterclaim-Defendants Irving Langer, Philip

Green, and Kevin Weiler to dismiss Defendant/Counterclaim-Plaintiff Paysafe Partners LP's

counterclaims, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim

upon which relief may be granted.  Counterclaim-Defendant Philip Green also moves to dismiss,

pursuant to Federal Rule of Civil Procedure 12(b)(2), for lack of personal jurisdiction.

Defendant/Counterclaim-Plaintiff, Paysafe Partners LP, opposes the motion and seeks leave to

amend its Answer and Counterclaims if the motions to dismiss are granted.  For the following

reasons, the Court respectfully recommends that Philip Green's motion be granted and that the

remaining motions be granted in part and denied in part.

<u>BACKGROUND</u>

The facts set forth below are those set forth in Defendant/Counterclaim-Plaintiff's Answer and Counterclaims ("Counterclaims").  As discussed below, they are accepted as true for the purposes of this motion.

Paysafe Partners LP ("Paysafe") is a limited partnership, with its principal place of business in California, that provides end-to-end payment solutions for businesses and consumers around the world, including online and mobile payment services.  (Counterclaims ¶¶ 1, 13.) Among other things, Paysafe processes Visa, Mastercard, and Discover credit card transactions for merchants in exchange for a fee.  (<u>Id.</u> ¶ 13.)

On or about June 7, 2016, Paysafe entered into a Referral Agreement (the "Agreement') with Merchant Payment Group d/b/a Merchant Bankcard ("MPG"), pursuant to which MPG was to secure merchants to process their credit card transactions through Paysafe and, in exchange, MPG would receive a share of the fees ("residuals") that the merchants paid for those processing services.  (<u>Id.</u> ¶¶ 26-27.)  The Agreement provided that Paysafe would pay an "upfront" bonus to MPG for each new merchant signed up through Paysafe; however, the Agreement further provided that Paysafe would be permitted to "claw back" that bonus from MPG if the merchant account was cancelled within six months.  (<u>Id.</u> ¶ 28.)  Paysafe and MPG also agreed that MPG would pay Paysafe to provide payment processing equipment to merchants referred by MPG. (<u>Id.</u> ¶ 29.)

On or about September 1, 2016, Paysafe and MPG amended the Agreement (the "Amendment") to provide that Paysafe would advance $1.5 million to MPG against the residuals MPG anticipated earning for its services.  (<u>Id.</u> ¶ 36.)  The Amendment provided that the $1.5

million advance would be paid to MPG in installments, with Paysafe scheduled to make the final payment in April 2017.  (Id. ¶ 37.)

From in or about April 2015 until on or about September 19, 2016, Defendant Sam Schwed ("Schwed") was the CEO and majority owner of MPG.  (Id. ¶ 14.)  On or about September 1, 2016, Schwed executed and delivered a written personal guaranty to Paysafe (the "Guaranty"), unconditionally promising to pay all amounts owed to Paysafe under both the Agreement and the Amendment.  (Id. ¶ 40.)

In April 2017, soon after Paysafe paid the final installment of the $1.5 million advance, MPG notified Paysafe that it was discontinuing its business operations.  (Id. ¶ 79.)  On April 27, 2017, Paysafe sent a letter to MPG, addressed to Schwed as CEO, advising MPG that Paysafe was terminating the Agreement due to MPG's continuing failure to meet a monthly minimum requirement for new merchant accounts and due to MPG's notice to Paysafe that it had ceased operations, both of which Paysafe considered to be material breaches of the Agreement.  (Id. ¶ 85.)  On May 30, 2017, Paysafe sent a follow-up notice of termination to MPG, noting that MPG had failed to cure its breaches of the Agreement.  (Id. ¶ 86.)

Pursuant to the Agreement, any and all disputes arising under or in connection with the Agreement were subject to "final and binding arbitration" before a panel of three arbitrators in Orange County, California.  (Id. ¶ 87.)  Paysafe instituted arbitration proceedings against MPG, pursuant to the Agreement, seeking to recover the $1.5 million advance, outstanding amounts owed for clawbacks of upfront bonuses, and outstanding equipment charges.  (Id. ¶ 88.)  Despite the language of the arbitration clause, Paysafe and MPG agreed to have the arbitration (the "Arbitration") take place in New York before a single arbitrator.  (Id. ¶ 87.)

MPG appeared in the Arbitration, denying Paysafe's claims and asserting various counterclaims. (Id. ¶ 89.) During the course of the Arbitration, the evidence demonstrated that from at least January 2016 through on or about September 19, 2016, Schwed embezzled more than $1 million from MPG. (Id. ¶ 44.) Schwed's embezzlement continued until it was discovered by other MPG personnel in or about September 2016, at which point the embezzlement was reported to Plaintiff/Counterclaim Defendant herein Irving Langer ("Langer"), MPG's principal investor and part-owner. (Id. ¶ 49.) The embezzlement was not disclosed to Paysafe. (Id. ¶ 50.)

MPG confronted Schwed about his embezzlement, who admitted it and signed a sworn affidavit on September 19, 2016, attesting to his embezzlement of more than $1 million from MPG. (Id. ¶ 51.) As a result of his embezzlement, Scwhed was fired as CEO of MPG on September 19, 2016 and was forced to transfer all his ownership interest in the company to Langer, who then became majority owner of MPG. (Id. ¶¶ 52-53.) Following the disclosure of Schwed's embezzlement and his termination, Counterclaim-Defendants Kevin Weiler ("Weiler") and Philip Green ("Green") were brought in to run MPG on Langer's behalf. (Id. ¶ 54.)

At no point after discovering Schwed's embezzlement did MPG seek to cancel the Amendment with Paysafe it signed approximately two weeks earlier. (Id. ¶ 55.) Nor was Paysafe ever made aware of Schwed's embezzlement by MPG; rather, Paysafe was completely unaware of it or the fact that Schwed had been fired until the Arbitration. (Id. ¶ 74.)

Paysafe prevailed at the Arbitration and was awarded $1,631,449.61 in damages (the "Award"). (Id. ¶ 90.) The Arbitrator denied all of MPG's counterclaims and it was awarded no damages. (Id. ¶ 91.) Paysafe filed a petition to confirm the Award on January 17, 2019 in the Southern District of New York. (Id. ¶ 92.) MPG did not appear in that action and the court

confirmed the Award on May 6, 2019.  (Id. ¶ 94.)  No payment has been made on the Award by

MPG, or anyone else, to Paysafe.  (Id. ¶ 98.)

On July 30, 2019, Langer commenced the within action against Paysafe, seeking a

declaratory judgment that he is not liable to Paysafe in any way.  (See generally Compl.)  In its

Answer to Langer's Complaint, Paysafe impleaded Schwed, Weiler and Green, alleging

Counterclaims against all of them for fraud and civil conspiracy.  (See generally Answer and

Counterclaims.)  Paysafe also alleges a counterclaim for breach of the Guaranty, solely against

Schwed; however, Scwhed has not filed a motion to dismiss the Counterclaims.  (Id.)

Langer, Weiler, and Green now move to dismiss Paysafe's Counterclaims, pursuant to

Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim.  Green also moves to

dismiss, pursuant to Rule 12(b)(2), for lack of personal jurisdiction.  Paysafe opposes the

motions in their entirety.  In addition, Paysafe seeks leave to amend its Counterclaims in the

event the motions are granted.

<u>DISCUSSION</u>

I.    <u>Green's Motion to Dismiss for Lack of Personal Jurisdiction</u>

Green, a resident of Massachusetts, seeks to have Paysafe's Counterclaims dismissed, as

alleged against him, for lack of personal jurisdiction.  In opposition, Paysafe asserts that Green is

subject to New York's long-arm jurisdiction as well as the general jurisdiction of the New York

courts.  In addition, Paysafe asserts that even if the Court finds there is no personal jurisdiction

over Green, rather than dismissing the Counterclaims against Green, the Court should permit the

parties to engage in limited jurisdictional discovery, including a deposition of Green, to ascertain

whether there is personal jurisdiction.

A.    Legal Standard

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant.  See Villanova v. Harbilas, No. 08 Civ. 10448, 2010 WL 1640187, at *2 (S.D.N.Y. Apr. 12, 2010) (citing In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003) (per curiam)).  Where the Court is only considering the pleadings and affidavits on the motion to dismiss, "the plaintiff need only make a prima facie showing" that jurisdiction exists.  Villanova, 2010 WL 1640187, at *2 (quoting CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 364 (2d Cir. 1986); see also O'Keefe v. Blue & Gold Fleet L.P., 634 F. Supp. 2d 284, 285 (E.D.N.Y. 2009).  In addition, the Court "must construe all of the allegations in the light most favorable to the plaintiff, and the plaintiff need only plead good faith allegations of fact that, if credited, would support jurisdiction over the defendant."  O'Keefe, 634 F. Supp. 2d at 285 (citing Whitaker v. Am. Telecasting, Inc., 261 F.3d 491, 495 (2d Cir. 2001)).  In deciding a motion to dismiss for lack of personal jurisdiction, a court may rely upon materials outside of the pleadings.  See Villanova, 2010 WL 1640187, at *2 (citing DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81, 84 (2d Cir. 2001)).

"The breadth of a federal court's personal jurisdiction is determined by the law of the state in which the district court is located."  O'Keefe, 634 F. Supp. 2d at 286 (quoting Thomas v. Ashcroft, 470 F.3d 491, 495 (2d Cir. 2006)) (additional citation omitted); see also Villanova, 2010  WL 1640187, at *3 ("Personal jurisdiction may be exercised over any defendant who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located.").  Here, the Court must look to New York's long-arm statute, N.Y. C.P.L.R. 302(a), to determine whether Green, a resident of Massachusetts, is subject to personal jurisdiction in New York.  See O'Keefe, 634 F. Supp. 2d at 286 (citing Whitaker, 261 F.3d at 209) (additional

citation omitted).  "If the exercise of jurisdiction is appropriate under [New York's long-arm statute], the court must decide whether such exercise comports with the requisites of due process." O'Keefe, 634 F. Supp. 2d at 286 (quoting Bensusan Rest. Corp. v. King, 126 F.3d 25, 27 (2d Cir. 1997)) (alteration in original); see also Villanova, 2010 WL 1640187, at *3 ("If plaintiff is able to establish a factual predicate for jurisdiction under the laws of the forum state . . . then the court must consider whether the exercise of jurisdiction violates due process."). Where the plaintiff fails to establish a basis for asserting jurisdiction over the defendant, however, the Court need not engage in the constitutional analysis. See O'Keefe, 634 F. Supp. 2d at 286 (citing Best Van Lines, Inc. v. Walker, 490 F.3d 239, 244 (2d Cir. 2007)).

B.     General Jurisdiction – C.P.L.R. 301

Under C.P.L.R. 301, a defendant is subject to the general jurisdiction of the New York courts where his "contacts with [the] state are so 'continuous and systematic' as to render [him] essentially at home in the forum State.'" Sonera Holding B.V. v. Cukurova Holding A.S., 750 F.3d 221, 225 (2d Cir. 2014) (quoting Goodyear Dunlop Tires Ops., S.A. v. Brown, 564 U.S. 915, 919 (2011)).  "To obtain general jurisdiction pursuant to CPLR 301 over an individual, he must be doing business in New York in his personal capacity, not merely as an officer of a corporation that does business in New York."  Shostack v. Diller, No. 15-CV-2255, 2015 WL 5535808, at *4 (S.D.N.Y. Sept. 16, 2015), adopted by, 2016 WL 958687, at *1 (S.D.N.Y. Mar. 8, 2016) (citing Ontel Prods., Inc. v. Project Strategies Corp., 899 F. Supp. 1144, 1148 n.5 (S.D.N.Y. 1995)) (additional citation omitted).

Paysafe argues that Green has had extensive contacts with New York in the past, including his employment as the chief operating officer, chief financial officer, and the co-founder of a private equity firm based in New York, as well as his employment as the chief

financial officer of MPG – both of which required routine visits to New York – which render

him subject to the Court's general jurisdiction.  (Paysafe Mem. of Law in Opp'n to Green's Mot.

to Dismiss 17.)  However, as Green points out, personal jurisdiction does not exist solely because

an individual is "the owner or a corporate officer" of a foreign corporation with a presence in

New York.  Leger v. Kalitta, No. 16-CV-6545, 2018 WL 2057142, at *5 (E.D.N.Y. Jan. 26,

2018) (citation omitted); see also Seaweed, Inc. v. DMA Prod. & Design & Mktg. LLC, 219 F.

Supp. 2d 551, 554 (S.D.N.Y. 2002) ("If an individual is sued in his individual capacity, but only

had contact with New York as an officer of a corporation acting within the scope of his

employment, that individual is not subject to personal jurisdiction in New York."); Pilates, Inc.

v. Current Concepts, No. 96 Civ. 0043, at *3 (S.D.N.Y. Oct. 18, 1996) ("[A] general allegation

that an officer controls a corporation is not sufficient to establish personal jurisdiction."); Kinetic

Instruments, Inc. v. Lares, 802 F. Supp. 976, 984 (S.D.N.Y 1992) ("The fact that [Plaintiff] is the

President and majority shareholder of [the corporation] does not necessarily mean that the

corporation will be considered his agent.")

Paysafe does not allege that Green transacts business in New York on his own behalf;

rather, it alleges that Green does so on behalf of MPG.  Such allegations are insufficient to

confer general personal jurisdiction over Green.

    C.      Long-Arm Jurisdiction – C.P.L.R. 302(a)(1)

New York's long-arm statute provides that a court may exercise personal

jurisdiction over any non-domiciliary who inter alia transacts any business within the state or

contracts anywhere to supply goods or services in the state.  See N.Y. C.P.L.R.  302(a)(1).

Pursuant to C.P.L.R. 302(a)(1), a non-domiciliary "transacts business" for purposes of long-arm

jurisdiction when he "purposefully avails [himself] of the privilege of conducting activities

within [New York], thus invoking the benefit and protections of its laws." CutCo Indus., 806 F.2d at 365 (quoting McKee Elec. Co. v. RaulandBorg Corp., 20 N.Y.2d 377, 382 (1967)); see also Best Van Lines, 490 F.3d at 246.  "Courts look to 'the totality of the defendant's activities within the forum,' . . . to determine whether a defendant has 'transact[ed] business' in such a way that it constitutes 'purposeful activity . . .'" Best Van Lines, 490 F.3d at 246 (quoting Sterling Nat'l Bank & Trust Co. of N.Y. v. Fidelity Mortgage Investors, 510 F.2d 870, 873 (2d Cir. 1975)) (alteration in original); see also Morsy v. Pal-Tech, Inc., 07 Civ. 2143, 2008 WL 3200165, at *4 ("Courts look to the totality of the circumstances to determine whether the defendant has engaged in such purposeful activity . . . .").  In addition, courts "require a 'substantial nexus' between the business transacted and the cause of action sued upon." Morsy, 2008 WL 3200165, at *4 (quoting Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp, 98 F.3d 25, 31 (2d Cir. 1996)); see also Best Van Lines, 490 F.3d at 246 ("[A] suit will be deemed to have arisen out of a party's activities in New York if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York."). "[P]roof of one transaction in New York is sufficient to confer jurisdiction [over a nonresident] as long as the activities of the defendant in question were purposeful and there is a substantial relationship between the transaction and the claim asserted." Weil v. American Univ., 07 Civ. 7748, 2008 WL 126604, at *5 (quoting Staten Island Hosp. v. Alliance Brokerage Corp., 560 N.Y.S.2d 859, 861 (2d Dep't 1990)) (second alteration in original).

Paysafe asserts that jurisdiction over Green is appropriate under C.P.L.R. 302(a)(1) based on his role as the chief financial officer of MPG, beginning in September 2016.  According to Paysafe, in the process of performing that role, Green actively participated in a scheme to fraudulently conceal from Paysafe that Schwed had been embezzling from the company and had

been fired as CEO and forced to give up his ownership interest in MPG.  (Paysafe Mem. of Law in Opp'n to Green Mot. to Dismiss 14.)  Paysafe further argues that as a result of the foregoing, Green transacted business in New York by committing a tort against Paysafe on behalf of MPG. (Id. 15.)

"Corporate officers who transact business or commit a tort in New York while acting on behalf of their employer are subject to personal jurisdiction in New York."  Pilates, 1996 WL 599564, at *2 (citing Kreutter v. McFadden Oil Corp., 71 N.Y.2d 460, 472 (1988)).  However, to establish personal jurisdiction on this basis, Paysafe "must allege personal conduct by the officer related to the transaction or tort which is the basis for the claim."  Pilates, 1996 WL 599564, at *3 (quoting Kreutter, 71 N.Y.2d at 470) (collecting cases).  Here, the Counterclaims do not allege any specific conduct by Green other than to conclusorily allege that he was the chief financial officer of MPG and is believed to have engaged in a scheme to conceal Scwed's embezzlement and termination from Paysafe.  The Counterclaims fail to describe any specific acts by Green in perpetration of the alleged fraud.  Such allegations fail to demonstrate a prima facie showing of personal jurisdiction over Green pursuant to C.P.L.R. 302(a)(1).

    D.    Long-Arm Jurisdiction – C.P.L.R. 302(a)(2)

C.P.L.R. 302(a)(2) provides for the exercise of personal jurisdiction over any foreign defendant who "commits a tortious act within the state."  N.Y. C.P.L.R. 302(a)(2). "Section 302(a)(2) has been narrowly construed to apply only when the defendant was actually physically present in New York when he performed the allegedly tortious act."  Aaron Consulting Co., LLC v. Snap Solutions LLC, No. 16-CV-6775, 2018 WL 4568800, at *6 (E.D.N.Y. Sept. 24, 2018) (citing Bensusan Rest. Corp., 126 F.3d at 28-29 (2d Cir. 1997)) (additional citation omitted).  However, where a conspiracy claim is alleged, "acts committed in

New York by the co-conspirator of an out-of-state defendant pursuant to a conspiracy may subject the out-of-state defendant to jurisdiction under C.P.L.R. 302(a)(2)." Chrysler Capital Corp. v. Century Power Corp., 778 F. Supp. 1260, 1266 (S.D.N.Y. 1991). Paysafe asserts that Green is subject to personal jurisdiction based on this co-conspirator theory.

To establish personal jurisdiction under C.P.L.R. 302(a)(2) based upon an allegation of conspiracy, Paysafe must first "make a prima facie factual showing of a conspiracy" and "allege specific facts warranting the inference that [Green was a] member[] of the conspiracy." In re Sumitomo Copper Litig., 120 F. Supp. 2d 314, 338-39 (S.D.N.Y. 2000). A court may draw such an inference based on circumstantial evidence if it is "fair and reasonable" to do so." Best Cellars, Inc. v. Grape Finds at Dupont, Inc., 90 F. Supp. 2d 431, 446 (S.D.N.Y. 2000) (citation omitted).

For the same reasons set forth above in connection with the Court's analysis of jurisdiction under C.P.LR. 302(a)(1), the factual allegations set forth in the Counterclaims are insufficient to demonstrate a prima facie showing of conspiracy with respect to Green. As with its fraud claim against Green, Paysafe conclusorily alleges that Green conspired with Langer and Weiler to fraudulently conceal Schwed's embezzlement and termination from Paysafe. These allegations fail to set forth any specific conduct undertaken by Green in furtherance of that alleged conspiracy. As such, the allegations against Green fail to provide a basis for exercising personal jurisdiction under C.P.L.R. 302(a)(2).[1]

---

[1] Since this Court finds that there is no personal jurisdiction over Green pursuant to New York's long-arm statute, it need not reach the issue of whether the exercise of personal jurisdiction would offend due process. See, e.g., Bensusan Rest. Corp., 126 F.3d at 27; Jonas v. Estate of Leven, 116 F. Supp. 3d 314, 334 (S.D.N.Y. 2015); Mangia Media Inc. v. University Pipeline, Inc., 846 F. Supp. 2d 319, 323-24 (E.D.N.Y. 2012)

For the foregoing reasons, this Court respectfully recommends that Green's motion to dismiss for lack of personal jurisdiction be granted and the Counterclaims against him be dismissed.

E.    Paysafe's Request for Jurisdictional Discovery

In its opposition to Green's motion to dismiss, Paysafe requests that, rather than granting Green's motion, the Court direct the parties to engage in limited jurisdictional discovery, including a deposition of Green.  This Court recommends that Paysafe's request be denied.

While a court has discretion to order jurisdictional discovery where a plaintiff fails to make a prima facie showing of personal jurisdiction, see New York v. Mountain Tobacco Co., 55 F. Supp. 3d 301, 314 (E.D.N.Y. 2014) (citing Leon v. Shmukler, 992 F. Supp. 2d 179, 194 (E.D.N.Y. 2014)), "a plaintiff is not entitled to such discovery in every situation."  Mountain Tobacco, 55 F. Supp. 3d at 314.   Rather, "only when the allegations are sufficient to articulate a colorable basis for personal jurisdiction, which could be established with a further development of the factual record," should such jurisdictional discovery be permitted.  Id. (citing Leon, 992 F. Supp. 2d at 195.

This Court finds that the allegations in the Counterclaims are insufficient to warrant jurisdictional discovery.  It is apparent from the papers submitted that there is no basis to subject Green to a suit in this forum.  Permitting Paysafe to engage in jurisdictional discovery with respect to Green would be akin to a fishing expedition, which the Court should not condone.  As "New York courts have cautioned . . . defendants, as a rule, should be subject to suit where they are normally found . . . or where they conduct substantial business activities."  Lubin v. Dubin, No. CV 13-6619, 2014 WL 794313, at *4 (E.D.N.Y. Feb. 24, 2014) (citation omitted).  New

York is not the appropriate forum for a suit against Green and jurisdictional discovery is unlikely to make it so.  Accordingly, it is respectfully recommended that Paysafe's request for jurisdictional discovery be denied and that Green's motion to dismiss be granted.

II.    Langer's and Weiler's 12(b)(6) Motions to Dismiss

    A.    Legal Standard

        "To survive a motion to dismiss [pursuant to Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "Facial plausibility" is achieved when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable of the misconduct alleged."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  As a general rule, the court is required to accept all of the factual allegations in the complaint as true and to draw all reasonable inferences in the plaintiff's favor.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Town of Babylon v. Fed. Hous. Fin. Agency, 699 F.3d 221, 227 (2d Cir. 2012).

        "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . are not entitled to the assumption of truth."  Iqbal, 556 U.S. at 678-79 (citation omitted); see also Twombly, 555 U.S. at 555 (stating that a court is "not bound to accept as true a legal conclusion couched as a factual allegation").  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," which state a claim for relief.  Iqbal, 556 U.S. at 679.  A complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice.  Iqbal, 556 U.S. at 678 (quoting Twombly, 555 U.S. at 557).

B.    Weiler's and Langer's Grounds for Dismissal

Paysafe alleges three Counterclaims in this action, only two of which are at issue in the within motion.  Paysafe's counterclaim for breach of the Guaranty is asserted against Schwed only, who has not moved to dismiss any of the Counterclaims against him.  Weiler and Langer move to dismiss the two Counterclaims asserted against them – fraud and civil conspiracy – on the grounds of res judicata, collateral estoppel and failure to state a claim.

C.    Res Judicata and Collateral Estoppel

"Res judicata and collateral estoppel are related but distinct doctrines that may bar a party from litigating certain claims or issues in a subsequent proceeding."  Flaherty v. Lang, 199 F.3d 607, 612 (2d Cir. 1999).  "Under the doctrine of res judicata or claim preclusion, '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'"  Roth v. County of Nassau, No. 15-CV-6358, 2018 WL 6539402, at *5 (E.D.N.Y. Mar. 27, 2018) (quoting Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981)).  The application of res judicata requires the establishment of four elements: "(1) there must be a final judgment; (2) the judgment must have been on the merits; (3) the parties in the second action must be the same as those in the first; and (4) the claims must be the same in the first and second actions."  Sedacca v. Mangano, No. 12-cv-1921, 2014 WL 1392224, at *3 (E.D.N.Y. Apr. 9, 2014) (internal quotation marks and citation omitted).

Similarly, "the doctrine of collateral estoppel provides that an issue may not be relitigated 'when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action.'"  Roth, 2018 WL 6539402, at *6 (quoting In

re Hyman, 502 F.3d 61, 65 (2d Cir. 2007)).  Like res judicata, collateral estoppel "has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 (1979).

Weiler and Langer argue that Paysafe's fraud counterclaim is barred by both res judicata and collateral estoppel based on the prior Arbitration, to which Paysafe was a party.  Paysafe asserts that its fraud claim is not barred by either doctrine because the Arbitrator did not rule on the merits of any fraud claim, since the only claim presented and ruled on in the Arbitration was for breach of contract.  According to Paysafe, it only learned of the fraud it now seeks to recover for during the course of the Arbitration itself.  Moreover, Langer was not a party to the Arbitration.  (Paysafe's Mem. of Law in Opp'n to Weiler's Mot. to Dismiss 13.)  The Court agrees with Paysafe.

As noted in the Arbitrator's Award, which the Court may consider as "integral" to the Counterclaims, as well as a "matter[] of which judicial notice may be taken," Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002), it was not until "during the course of the [arbitration] hearing, that evidence was revealed that Schwed had been embezzling money from MPG."  (Award at 3-4.)  The Arbitrator further noted that upon Schwed's termination in September 2016, "MPG's principal investor, Irving Langer, brought in new advisors to run the company who did not advise Paysafe what happened."  (Id. at 4.)  Accordingly, it is clear from the Award that Paysafe was unaware of any alleged fraud prior to the Arbitration and, therefore, could not have pursued a fraud claim at the Arbitration.

Moreover, the Award makes no mention of any fraud claim by Paysafe; nor does it award damages for any such claim.  Rather, the Award focuses solely on Paysafe's breach of contract

claim, stating specifically that Paysafe brought the arbitration "seeking repayment of the $1.5 million advance, as well as money owed to it with respect to the claw back of merchant signing bonuses, where accounts did not remain open for the requisite time, as well as the payment for equipment it provided to MPG's merchants." (Award at 5.) It is clear to this Court that the fraud alleged in Paysafe's Counterclaims was not a subject placed before the Arbitrator in the prior proceeding. Nor could it have been since the Award makes clear that Paysafe only learned of the alleged fraud during the Arbitration. For these reasons, this Court finds that Paysafe's fraud counterclaim is not barred by either res judicata or collateral estoppel and respectfully recommends that Weiler's and Langer's motions to dismiss be denied with respect to this ground.

      D.    <u>Failure to State a Claim</u>

          1.    <u>Fraud</u>

      Paysafe's first counterclaim that Weiler and Langer seek to dismiss alleges common law fraud. To state a claim for common law fraud under New York law, a plaintiff must allege facts showing: "(1) a misrepresentation or a material omission of fact which was false and known to be false by defendant, (2) made for the purpose of inducing the other party to rely upon it, (3) justifiable reliance of the other party on the misrepresentation or material omission, and, (4) injury." <u>Premium Mortg. Corp. v. Equifax, Inc.</u>, 583 F.3d 103, 108 (2d Cir. 2009) (citations omitted).

      In addition, pursuant to Federal Rule of Civil Procedure 9(b), fraud claims must be pled with particularity. <u>See</u> Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.") As the Second Circuit has repeatedly held, Rule 9(b) "requires the plaintiff '(1) to specify the statements that the plaintiff

contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" Nakahata v. New York-Presbyterian Healthcare Sys., 723 F.3d 192, 197 (2d Cir. 2013) (quoting Mills v. Polar Molecular Corp. 12 F.3d 1170, 1175 (2d Cir. 1993)) (additional citations omitted). "Conculsory statements and allegations are not enough to meet the Rule 9(b) pleading requirements." Beth Israel Med. Ctr. v. Verizon Bus. Network Servs., No. 11 Civ. 4509, 2013 WL 1385210, at *4 (S.D.N.Y. Mar. 18, 2013) (quoting Musalli Factory for Gold & Jewelry Co. v. JPMorgan Chase Bank, N.A., 382 Fed. Appx. 107, 108 (2d Cir. 2010)).

The plaintiff must also "allege facts that give rise to a strong inference of fraudulent intent." Nakahata, 723 F.3d at 198 (quoting First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 175 (2d Cir. 2004)). "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994) (citing cases).

Weiler and Langer both argue that Paysafe has failed to plead fraud with particularity, as required by Rule 9(b). The Court agrees. The fraud counterclaim conclusorily alleges that Weiler and Langer "decided to fraudulently conceal from Paysafe that Schwed had been embezzling from the company and that MPG had fired him as CEO and forced him to give up all ownership interests in the company." (Counterclaim ¶ 58.) Paysafe further alleges that Weiler and Langer "made false representations to Paysafe . . . that Schwed was still CEO." (Id. ¶ 61.)

While Paysafe asserts that Weiler and Langer made misrepresentations, it fails to specify who made the statements, what the contents of those statements were, where the statements were

made, or when they were made.  Such a lack of specificity is fatal to a fraud claim.  See Beth Israel Med. Ctr., 2013 WL 1385210, at *4; see also Alnwick v. European Micro Holdings, Inc., 281 F. Supp. 2d 629, 640 (E.D.N.Y. 2003) ("[C]onclusory allegations that defendant's conduct was fraudulent or deceptive are not enough.").

In addition, Paysafe fails to differentiate between Weiler and Langer, simply attributing all of the alleged fraudulent misrepresentations and omissions to both individuals.  "Rule 9(b) is not satisfied where the complaint vaguely attributes the fraudulent statements to 'defendants.'" Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993) (citation omitted); see also Alnwick, 281 F. Supp. 2d at 640 ("Where there are multiple defendants, Rule 9(b) requires that the plaintiff allege facts specifying each defendant's contribution to the fraud.").

For these reasons, this Court finds that Paysafe fails to state a claim for fraud and respectfully recommends that Weiler's and Langer's motions to dismiss the fraud counterclaim be granted.[2]

    4.    Civil Conspiracy

Weiler and Langer also seek to dismiss Paysafe's counterclaim for civil conspiracy.  "New York, however, does not recognize a substantive tort of civil conspiracy." Payday Advance Plus, Inc. v. Findwhat.com, Inc., 478 F. Supp. 2d 496, 506 (S.D.N.Y. 2007) (citing Antonios A. Alevixopoulos & Assocs. v. Comcast Int'l Holdings, Inc., 100 F. Supp. 2d 178, 187 (S.D.N.Y. 2000)).  Rather, a claim of civil conspiracy in New York requires "allegations of an independent intentional tort." Payday Advance Plus, 478 F. Supp. 2d at 506

---

[2] Because the Court finds that the fraud counterclaim is not properly pled, there is no need to reach the merits of the fraud claim.

(citing <u>Agron v. Douglas W. Dunham, Esq. & Assocs.</u>, No. 02 Civ. 10071, 2004 WL 691682, at *6 (S.D.N.Y. Mar. 31, 2004)) (additional citation omitted).

Accordingly, to state a claim for civil conspiracy under New York law, "a plaintiff must allege an underlying tort, as well as the following elements: '(1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury.'" <u>Homere v. United States Small Bus. Admin.</u>, 347 F. Supp. 3d 147, 169 (E.D.N.Y. 2018) (quoting <u>Bigio v. Coca-Cola Co.</u>, 675 F.3d 163, 176 (2d Cir. 2012)) (additional citation omitted).  Where, as here, a civil conspiracy claim is based on an underlying fraud claim, the failure to plead fraud with particularity is also fatal to the civil conspiracy claim because the requirement to allege an underlying tort is not met.  <u>See</u> <u>Payday Advance Plus</u>, 478 F. Supp. 2d at 507.  Accordingly, Paysafe has failed to adequately plead a civil conspiracy claim in its Counterclaims.

Moreover, even if adequately pled, Paysafe's conspiracy claim is barred by the intracorporate conspiracy doctrine.  "It is well-settled that, under the intracorporate conspiracy doctrine, an entity cannot conspire with itself."  <u>Williams v. County of Nassau</u>, No. 15-CV-7098, 2017 WL 1216566, at *6 (E.D.NY. Mar. 30, 2017) (quoting <u>Michael v. County of Nassau</u>, No. 09-CV-5200, 2010 WL 3237143, at *5 (E.D.N.Y. Aug. 11, 2010)).  Pursuant to the intracorporate conspiracy doctrine, "officers, agents, and employees of a single corporate entity . . . , each acting within the scope of his or her employment, are legally incapable of conspiring with each other."  <u>Rodriguez v. City of New York</u>, 644 F. Supp. 2d 168, 200 (E.D.N.Y. 2008).

Paysafe alleges that Weiler and Langer, both acting on behalf of MPG, conspired to commit fraud against Paysafe.  (Counterclaims ¶¶ 147-54.)  Since Weiler and Langer are both alleged to be employees or agents of the same corporation – MPG – the intracorporate

conspiracy doctrine bars Paysafe's claim. An exception to this doctrine "applies where a plaintiff adequately alleges that each defendant possessed an independent, personal conspiratorial purpose, wholly separate and apart from the entity." Reich v. Lopez, 38 F. Supp. 3d 436, 463 (S.D.N.Y. 2014) (quoting Broich v. Inc. Vill. of Southampton, 650 F. Supp. 2d 234, 247 (E.D.N.Y. 2009)). Accordingly, to avoid the application of the intracorporate conspiracy doctrine, Paysafe must allege that Weiler and Langer "were motivated by an [] independent personal stake in achieving the corporation's objective rather than merely carrying out the corporation's managerial policy." Reich, 38 F. Supp. 3d at 463 (internal quotation marks and citations omitted).

The allegations in Paysafe's conspiracy counterclaim fail to satisfy the exception to the intracorporate conspiracy doctrine. The Counterclaims allege that Weiler and Langer conspired to fraudulently conceal Schwed's embezzlement and termination from Paysafe "to induce [Paysafe] to continue making payments on the $1.5 million advance and to induce Paysafe to continue making payments due under its agreement with MPG." (Counterclaims ¶ 147.) According to Paysafe, had it learned of Schwed's embezzlement and termination, "it would have ceased any further advances, payments or other financial considerations to MPG" and would have "likely been able to recoup immediately the advance funds that had already been paid." (Id. ¶ 153.) Accordingly, all of the allegations in support of Paysafe's conspiracy counterclaim assert that Weiler and Langer concealed Schwed's embezzlement and termination in order to confer a benefit upon MPG. Nothing in the counterclaim alleges that Weiler or Langer were motivated by a personal interest in their purported fraudulent conduct. Accordingly, Paysafe's civil conspiracy counterclaim fails to state a claim upon which relief may be granted and this Court

respectfully recommends that Weiler's and Langer's motion to dismiss Paysafe's civil conspiracy counterclaim be granted.

III.    <u>Leave to Amend</u>

Paysafe requests that in the event the motions to dismiss are granted, it be granted leave to amend its Counterclaims.  The general rule is that a court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  <u>Gomez v. USAA Fed. Sav. Bank</u>, 171 F.3d 794, 795-96 (2d Cir. 1999) (quoting <u>Branum v. Clark</u>, 927 F.2d 698, 705 (2d Cir. 1991)); <u>see also</u> <u>Cruz v. TD Bank, N.A.</u>, 742 F.3d 520, 523 (2d Cir. 2013) ("[I]t is the usual practice upon granting a motion to dismiss to allow leave to replead.").  Accordingly, the Court recommends that Paysafe be granted leave to replead its Counterclaims.  Paysafe is cautioned, however, that in the event this Report and Recommendation is adopted and Plaintiff is granted leave to replead, amendment should only be attempted if it has additional factual matters to allege that would cure the deficits identified by this Court.

<u>RECOMMENDATION</u>

For the foregoing reasons, this Court respectfully recommends that Counterclaim-Defendant Green's motion to dismiss for lack of personal jurisdiction be granted.  The Court further recommends that Counterclaim-Defendants Weiler's and Langer's motions to dismiss Paysafe's fraud and civil conspiracy counterclaims be granted in part and denied in part, as set forth above.  Finally, the Court respectfully recommends that Paysafe be granted leave to replead its Counterclaims.

## OBJECTIONS

A copy of this Report and Recommendation is being provided to all counsel via ECF. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of filing of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals. Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision").

**SO ORDERED:**

Dated:  Central Islip, New York
        May 22, 2020                               /s/      Anne. Y. Shields
                                                   ANNE Y. SHIELDS
                                                   United States Magistrate Judge