| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK<br>─────────────────────────────────────X<br>IRVING LANGER,<br><br>                      Plaintiff,<br><br>    v.<br><br>PAYSAFE PARTNERS LP,<br><br>                      Defendants.<br>─────────────────────────────────────X<br>PAYSAFE PARTNERS LP,<br><br>                      Plaintiff,<br><br>    v.<br><br>IRVING LANGER, SAM SCHWED, PHILIP<br>GREEN, and KEVIN WEILER,<br><br>                      Defendants.<br>─────────────────────────────────────X | For Online Publication Only<br><br><br>**ORDER**<br>19-CV-4388 (JMA) |

**AZRACK, United States District Judge:**

**A.  The Pending Motions to Dismiss and Judge Shields's R&R**

      Currently pending before the Court are three separate motions by Counterclaim-Defendants Irving Langer, Philip Green, and Kevin Weiler (collectively, "Defendants") to dismiss the counterclaims of Defendant/Counterclaim-Plaintiff Paysafe Partners LP ("Paysafe"), pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief may be granted.  Counterclaim-Defendant Philip Green also moves to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(2), for lack of personal jurisdiction.  The Court referred these motions to the Honorable Anne. Y. Shields for a Report and Recommendation (the "R&R).  In the R&R, Judge Shields recommended:  (1) granting Green's motion to dismiss for lack of personal jurisdiction; (2) granting in part and denying the other motions to dismiss Paysafe's counterclaims;

and (3) granting Paysafe leave to amend its counterclaims "if it has additional factual matters to allege that would cure the deficits identified by this Court." In doing so, Judge Shields rejected Langer's argument that Paysafe's counterclaims are barred by res judicata and collateral estoppel.

Langer, Green, and Weiler filed objections to the R&R arguing that Paysafe should not be granted leave to replead because Paysafe's claims are barred by res judicata and collateral estoppel and the R&R overlooked Langer's argument that he had no duty to disclose.

After these objections were filed, the Court stayed Paysafe's time to file objections and to respond to the two pending objections. Paysafe indicated to the Court that it did not intend to file objections and, instead, sought to file an amended complaint. The Court finds that no further briefing on the pending objections is warranted.

As explained below, the Court adopts the R&R and, as explained further in the next section, directs Paysafe to file a proposed amended pleading and motion to amend by December 30, 2020.

In reviewing a magistrate judge's report and recommendation, the court must "make a de novo determination of those portions of the report or . . . recommendations to which objection[s][are] made." 28 U.S.C. § 636(b)(1)(C); see also Brown v. Ebert, No. 05–CV–5579, 2006 WL 3851152, at *2 (S.D.N.Y. Dec. 29, 2006). The court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Those portions of the Report to which there is no specific reasoned objection are reviewed for clear error. See Pall Corp. v. Entegris, Inc., 249 F.R.D. 48, 51 (E.D.N.Y. 2008).

The Court agrees with the R&R that Paysafe should be granted leave to file an amended complaint "if it has additional factual matters to allege that would cure the deficits identified by this Court." And, as explained below, the Court rejects Langer's argument that res judicata and collateral estoppel preclude Paysafe's fraud claims.

Although Langer contends that claim preclusion bars Paysafe's fraud claim, he provides no authority in support of this meritless argument. Langer's objection focuses, instead, on issue preclusion. The Court agrees with the R&R that issue preclusion is also inapplicable here.

Under either federal law or New York state law, in order to invoke the doctrine of issue preclusion (also known as collateral estoppel), a party must show that an issue was actually decided in a prior proceeding and that its determination must have been essential to that judgment. See Postlewaite v. McGraw-Hill, Inc., 333 F.3d 42, 48 (2d Cir. 2003); BBS Norwalk One, Inc. v. Raccolta, Inc., 177 F.3d 674, 677 (2d Cir. 1997). "The prior decision need not have been explicit on the point, since '[i]f by necessary implication it is contained in that which has been explicitly decided, it will be the basis for collateral estoppel.'" BBS Norwalk One, Inc., 117 F.3d at 677 (quoting Norris v. Grosvenor Mktg. Ltd.. 803 F.2d 1281, 1285 (2d Cir. 1986)). Nevertheless, "[t]he party asserting preclusion bears the burden of showing with clarity and certainty what was determined by the prior judgment, and [i]ssue preclusion will apply only if it is quite clear that this requirement has been met." Postlewaite, 33 F.3d at 49 (quoting BBS Norwalk One, Inc., 177 F.3d at 677) (emphasis in original).

Langer has not met his burden of showing with "clarity and certainty" that Paysafe's fraud claim was actually decided in, and was essential to, the Arbitration Award. Langer argues that the Arbitrator implicitly, but necessarily, concluded that no fraud occurred. In its post-hearing brief, Paysafe argued to the Arbitrator that MPG committed fraud and that, under the parties' agreement, this fraudulent conduct terminated MPG's right to collect residuals as of September 2016 and, thus, precluded MPG from claiming an off-set based on those residuals. (ECF No. 44-3.)

The Arbitrator did not explicitly discuss this issue in his decision. The Arbitrator did, however, ultimately conclude that Paysafe's obligation to pay residuals ended not in September

3

2016, but after Paysafe served its "May [2017] notice of termination." (Arbitration Award at 8, ECF No. 50-1.) According to the Arbitrator, given that notice, "Section 4.05 of the Agreement relieved Paysafe of its obligation to continue paying residuals in light of MPG's material breaches of contract." (Id.)

However, contrary to Langer's argument, the Arbitrator's ruling did not necessarily imply that no fraud occurred. Although the Arbitrator concluded that May 2017 was the controlling date for the termination of Paysafe's obligations to pay residuals, it does not necessarily follow that the reason he reached this conclusion was the absence of fraud.

Section 4.05 of the agreement provided that:

> <u>In the event (before or after any termination or expiration of this Agreement) of (i) the fraudulent conduct of Company or any of its employees, agents or representatives</u>, (ii) Company commits a material breach (as defined below) of any of the terms set forth in this Agreement, or (iii) Company or any of its employees, agents or representatives violates any provisions set forth in section 5.07<u>, Paysafe shall be under no obligation to make further payments hereunder following the effective date of such termination subject to the procedure as set forth below. Before Paysafe may terminate further payments to Company under this Agreement for the reasons set forth in this section, Company will be given thirty (30) days written notice to cure such breach. If not cured within thirty (30) days, Paysafe shall not be under any obligation to make further payments to Company hereunder following the expiration date of such notice</u>. A material breach is defined as a breach of this Agreement which (a) involves a substantial failure to perform a term that is an essential element of this Agreement; or (b) the circumstances, including the language of this Agreement, the reasonable expectations of the parties, the standards and practices of the business, trade, or industry, and the character of the breach, indicate that: (A) the breach caused or likely to cause substantial harm to the aggrieved party; or (B) the breach substantially deprived or is likely to substantially deprived the aggrieved party of a significant benefit it is reasonably expected under this Agreement. <u>If Company or its representatives engage in practices that involve elements of fraud, if the fraud or other conduct is determined to be the act of an individual who is not an owner or officer of Company, or an individual acting in collusion with an owner or officer of Company, in order to cure said breach Company may cure the fraud during the time period of thirty (30) days as follows.</u> The fraud will be deemed cured if Company terminates its relationship with the individual or individuals who have committed the fraud and compensates Paysafe for the damages incurred by Paysafe as a result of such fraud . . . .

4

(Referral Agreement, ECF No. 50-1 at 52) (emphasis added).

These provisions are ambiguous and raise the question of what constitutes the "the effective date of such termination" when fraud has been committed by an owner or officer.[1] Paysafe's fraud argument before the Arbitrator (and Langer's argument before this Court) appear to have assumed that the "effective date of such termination" would be the date that such fraud was committed. However, the correctness of that assumption is far from clear based on the text of Section 4.05.

To the extent MPG's breach/fraud was curable, Paysafe was clearly obligated to provide notice to MPG of the breach/fraud, and Paysafe would only be excused from "any further payments" if the breach/fraud was not cured "following the expiration date of such [30-day] notice." However, Section 4.05 does not state what the "effective date of such termination" is for non-curable fraud committed by an owner or officer and the "procedure set forth below" does not address this issue. The Arbitrator may have concluded that the fraud occurred (and was committed by an owner or officer) but that, given the language in the agreement, the "effective date of such termination" was not the date when the fraud occurred and would instead be some later date on or after May 2017.[2]

Given the ambiguities in Section 4.05, Langer cannot show "with clarity and certainty" that the Arbitrator's analysis of the residuals issue was necessarily premised on a finding that no fraud was committed. Accordingly, Langer's collateral estoppel argument fails.

Moreover, the Arbitrator's recitation of the facts is difficult, if not impossible, to square

---

[1] Langer's argument appears to assume that the "effective date of such termination" refers to the termination of Paysafe's obligations to make residual payments. However, this phrase could also, potentially, refer to the "termination" of the Agreement, which is referenced earlier in the same sentence.

[2] Even assuming, for the sake of argument, that this Court—if it had been presented, in the first instance, with this question as a matter of contract interpretation—would interpret this ambiguous language in Langer's favor, there is still sufficient ambiguity in these provisions that this Court cannot say that the Arbitrator necessarily interpreted these provisions to mean that the alleged fraud—if proved—would have cut off MPG's right to residual payments as of the date that the fraud was committed.

with Langer's argument that the Arbitrator implicitly (and necessarily) found that MPG did not commit fraud. The Arbitrator expressly stated that "MPG went to great lengths to conceal Mr. Schwed's fraud and change in position by rehiring him on September 20, 2016 as its Manager of Operations and <u>continuing to misrepresent him as MPG's CEO</u>, at least through the date of the final payments of the advance." (Arbitration Award at 4 (emphasis added).) This point from the Arbitrator's decision also shows that Langer cannot establish "with clarity and certainty" that the Arbitrator concluded that no fraud was committed (or, relatedly, that Paysafe failed to prove such fraud).

The R&R also recommended that Green's motion to dismiss for lack of personal jurisdiction be granted and that Paysafe's request for jurisdictional discovery be denied. Paysafe has declined to file any objections on those issues. Finding no clear error, the Court grants Green's motion to dismiss for lack of personal jurisdiction and denies Paysafe's request for jurisdictional discovery.

In sum, the Court adopts the R&R and: (1) grants Green's motion to dismiss for lack of personal jurisdiction; (2) grants in part and denies in part Weiler's and Langer's motions to dismiss Paysafe's counterclaims as set forth in the R&R; and (3) grants Paysafe leave to amend its counterclaims "if it has additional factual matters to allege that would cure the deficits identified by this Court."

B. **Paysafe's Pre-Motion Conference Letter Concerning a RICO claim**

On September 11, 2020, Paysafe filed a pre-motion conference letter in which it sought leave to file its proposed amended pleading to add a RICO counterclaim. The Court waives its pre-motion conference requirement. Paysafe is directed to file a proposed amended pleading and

motion to amend concerning the proposed RICO counterclaim by December 31, 2020.[3] By January 31, 2021, Weiler and Langer shall file their opposition to the motion to amend and any motion to dismiss. Paysafe shall file a reply (and opposition to any motion to dismiss) by February 15, 2021. Langer and Weiler shall file replies for any motion to dismiss by March 1, 2021.

**SO ORDERED.**

Dated: November 30, 2020
Central Islip, New York

                                                  /s/ (JMA)
                                            JOAN M. AZRACK
                                            UNITED STATES DISTRICT JUDGE

---

[3] The Court is adopting the R&R's recommendation that Paysafe be granted leave to amend its counterclaims "if it has additional factual matters to allege that would cure the deficits identified by this Court." That recommendation did not envision Plaintiff adding a RICO claim to this amended pleading. Accordingly, Paysafe must explain in its motion to amend why it should be granted leave to add a RICO claim.