UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
IRVING LANGER,

        Plaintiff,          **REPORT AND**
                       **RECOMMENDATION**
  -against-               CV 19-4388 (JMA)(AYS)

PAYSAFE PARTNERS LP,

        Defendant.
-------------------------------------------------------------------X
PAYSAFE PARTNERS LP,

       Counterclaim-Plaintiff,

  -against-

IRVING LANGER, SAM SCHWED, PHILIP GREEN,
and KEVIN WEILER,

       Counterclaim-Defendants.
-------------------------------------------------------------------X
**ANNE Y. SHIELDS, United States Magistrate Judge:**

  Before the Court, on referral from the Honorable Joan M. Azrack for report and recommendation, are the following motions: (1) by Counterclaim-Defendants Irving Langer and Philip Green to dismiss Defendant/Counterclaim-Plaintiff Paysafe Partners LP's Amended Counterclaims, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief may be granted, and for lack of personal jurisdiction with respect to Philip Green, pursuant to Federal Rule of Civil Procedure 12(b)(2); and (2) by Counterclaim-Defendant Kevin Weiler, to dismiss the Amended Counterclaims, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief may be granted. Defendant/Counterclaim-Plaintiff, Paysafe Partners LP, opposes the motions. For the following

reasons, this Court respectfully recommends that both motions be granted and that the Amended Counterclaims be dismissed in their entirety, with prejudice.

BACKGROUND

The facts set forth below are those set forth in Defendant/Counterclaim-Plaintiff's Amended Answer and Counterclaims ("Amended Counterclaims"). As discussed below, they are accepted as true for the purposes of this motion.

Paysafe Partners LP ("Paysafe") is a limited partnership, with its principal place of business in California, that provides end-to-end payment solutions for businesses and consumers around the world, including online and mobile payment services. (Amended Counterclaims ("AC") ¶¶ 1, 15.) Among other things, Paysafe processes Visa, Mastercard, and Discover credit card transactions for merchants in exchange for a fee. (Id. ¶ 15.)

On or about June 7, 2016, Paysafe entered into a Referral Agreement (the "Agreement") with Merchant Payment Group d/b/a Merchant Bankcard ("MPG"), pursuant to which MPG was to secure merchants to process their credit card transactions through Paysafe and, in exchange, MPG would receive a share of the fees ("residuals") that the merchants paid for those processing services. (Id. ¶¶ 28-29.) The Agreement provided that Paysafe would pay an "upfront" bonus to MPG for each new merchant signed up through Paysafe; however, the Agreement further provided that Paysafe would be permitted to "claw back" that bonus from MPG if the merchant account was cancelled within six months. (Id. ¶ 30.) Paysafe and MPG also agreed that MPG would pay Paysafe to provide payment processing equipment to merchants referred by MPG. (Id. ¶ 31.)

On or about September 1, 2016, Paysafe and MPG amended the Agreement (the "Amendment") to provide that Paysafe would advance $1.5 million to MPG against the residuals

MPG anticipated earnings for its services. (Id. ¶ 42.) The Amendment provided that the $1.5 million advance would be paid to MPG in installments, with Paysafe scheduled to make the final payment in April 2017. (Id. ¶ 43.)

From in or about April 2015 until on or about September 19, 2016, Defendant Sam Schwed ("Schwed") was the Chief Executive Officer ("CEO") and majority owner of MPG. (Id. ¶ 16.) On or about September 1, 2016, Schwed executed and delivered a written personal guaranty to Paysafe (the "Guaranty"), unconditionally promising to pay all amounts owed to Paysafe under both the Agreement and the Amendment. (Id. ¶ 47.)

In April 2017, soon after Paysafe paid the final installment of the $1.5 million advance, MPG notified Paysafe that it was discontinuing its business operations. (Id. ¶ 395.) On April 27, 2017, Paysafe sent a letter to MPG, addressed to Schwed as CEO, advising MPG that Paysafe was terminating the Agreement due to MPG's continuing failure to meet a monthly minimum requirement for new merchant accounts and due to MPG's notice to Paysafe that it had ceased operations, both of which Paysafe considered to be material breaches of the Agreement. (Id. ¶ 405.) On May 30, 2017, Paysafe sent a follow-up notice of termination to MPG, noting that MPG had failed to cure its breaches of the Agreement. (Id. ¶ 406.)

Pursuant to the Agreement, any and all disputes arising under or in connection with the Agreement were subject to "final and binding arbitration" before a panel of three arbitrators in Orange County, California. (Id. ¶ 410.) Paysafe instituted arbitration proceedings against MPG, pursuant to the Agreement, seeking to recover the $1.5 million advance, outstanding amounts owed for clawbacks of upfront bonuses, and outstanding equipment charges. (Id. ¶ 411.) Despite the language of the arbitration clause, Paysafe and MPG agreed to have the arbitration (the "Arbitration") take place in New York before a single arbitrator. (Id. ¶ 410.)

MPG appeared in the Arbitration, denying Paysafe's claims and asserting various counterclaims. (Id. ¶ 412.) During the course of the Arbitration, the evidence demonstrated that from at least January 2016 through on or about September 19, 2016, Schwed embezzled more than $1 million from MPG. (Id. ¶ 38.) Schwed's embezzlement continued until it was discovered by other MPG personnel in or about September 2016, at which point the embezzlement was reported to Plaintiff/Counterclaim Defendant herein Irving Langer ("Langer"), MPG's principal investor and part-owner. (Id. ¶ 53.) The embezzlement was not disclosed to Paysafe. (Id. ¶ 55.)

MPG confronted Schwed about his embezzlement, who admitted it and signed a sworn affidavit on September 19, 2016, attesting to his embezzlement of more than $1 million from MPG. (Id. ¶¶ 56, 66.) As a result of his embezzlement, Scwhed was fired as CEO of MPG on September 19, 2016, and was forced to transfer all his ownership interest in the company to Langer, who then became majority owner of MPG. (Id. ¶¶ 68-69.) Following the disclosure of Schwed's embezzlement and his termination, Counterclaim-Defendants Kevin Weiler ("Weiler") and Philip Green ("Green") were brought in to run MPG on Langer's behalf. (Id. ¶ 73.) On September 20, 2016 – one day after his termination as CEO – Schwed was rehired by MPG as Manager of Operations. (Id. ¶ 97.)

At no point after discovering Schwed's embezzlement did MPG seek to cancel the Amendment with Paysafe it signed approximately two weeks earlier. (Id. ¶¶ 104-05.) Nor was Paysafe ever made aware of Schwed's embezzlement by MPG; rather, Paysafe was completely unaware of it or the fact that Schwed had been fired until the Arbitration. (Id. ¶ 388.)

Paysafe prevailed at the Arbitration and was awarded $1,631,449.61 in damages (the "Award"). (Id. ¶ 413.) The Arbitrator denied all of MPG's counterclaims and it was awarded no damages. (Id. ¶ 414.) Paysafe filed a petition to confirm the Award on January 17, 2019, in the

4

Southern District of New York. (Id. ¶ 415.) MPG did not appear in that action and the court confirmed the Award on May 6, 2019. (Id. ¶ 416-17.) No payment has been made on the Award by MPG, or anyone else, to Paysafe. (Id. ¶ 421.)

On July 30, 2019, Langer commenced the within action against Paysafe, seeking a declaratory judgment that he is not liable to Paysafe in any way. (See generally Compl., Docket Entry ("DE") [1].) In its Answer to Langer's Complaint, Paysafe impleaded Schwed, Weiler and Green, alleging counterclaims against all of them for fraud and civil conspiracy. (See generally Answer and Counterclaims, DE [7].) Paysafe also alleged a counterclaim for breach of the Guaranty, solely against Schwed; however, Scwhed has not appeared in this action and the Clerk of the Court certified his default on October 11, 2019. (DE [32].)

Thereafter, Langer, Weiler and Green moved to dismiss Paysafe's Amended Counterclaims, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim. Green also moved to dismiss, pursuant to Rule 12(b)(2), for lack of personal jurisdiction. Paysafe opposed the motions in their entirety.

By Report and Recommendation dated May 22, 2020, this Court recommended that Langer, Weiler, and Green's motions to dismiss all be granted. (DE [58].) The Court further recommended that Paysafe be granted leave to amend its counterclaims. (Id.) Despite objections thereto, the District Court adopted the Report and Recommendation in its entirety. (DE [70].)

Paysafe filed its Amended Answer and Counterclaims on December 30, 2020. (DE [71].) Presently before the Court are Langer and Green's motion to dismiss the Amended Counterclaims for failure to state a claim and lack of personal jurisdiction over Green, (DE [79]), as well as Weiler's motion to dismiss for failure to state a claim. (DE [79-1].) Paysafe opposes both motions.

5

DISCUSSION

I.  Green's Motion to Dismiss for Lack of Personal Jurisdiction

Green, a resident of Massachusetts, seeks to have Paysafe's Counterclaims dismissed, as alleged against him, for lack of personal jurisdiction. In opposition, Paysafe asserts that Green is subject to New York's long-arm jurisdiction under both Sections 302(a)(1) and 302(a)(2) of New York's Civil Practice Law and Rules ("C.P.L.R.").

A.  Legal Standard

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant. See Villanova v. Harbilas, No. 08 Civ. 10448, 2010 WL 1640187, at *2 (S.D.N.Y. Apr. 12, 2010) (citing In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003) (per curiam)). Where the Court is only considering the pleadings and affidavits on the motion to dismiss, "the plaintiff need only make a prima facie showing" that jurisdiction exists. Villanova, 2010 WL 1640187, at *2 (quoting CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 364 (2d Cir. 1986)); see also O'Keefe v. Blue & Gold Fleet L.P., 634 F. Supp. 2d 284, 285 (E.D.N.Y. 2009). In addition, the Court "must construe all of the allegations in the light most favorable to the plaintiff, and the plaintiff need only plead good faith allegations of fact that, if credited, would support jurisdiction over the defendant." O'Keefe, 634 F. Supp. 2d at 285 (citing Whitaker v. Am. Telecasting, Inc., 261 F.3d 491, 495 (2d Cir. 2001)). In deciding a motion to dismiss for lack of personal jurisdiction, a court may rely upon materials outside of the pleadings. See Villanova, 2010 WL 1640187, at *2 (citing DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81, 84 (2d Cir. 2001)).

"The breadth of a federal court's personal jurisdiction is determined by the law of the state in which the district court is located." O'Keefe, 634 F. Supp. 2d at 286 (quoting Thomas v. Ashcroft, 470 F.3d 491, 495 (2d Cir. 2006)) (additional citation omitted); see also Villanova,

6

2010 WL 1640187, at *3 ("Personal jurisdiction may be exercised over any defendant who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located."). Here, the Court must look to New York's long-arm statute, N.Y. C.P.L.R. 302(a), to determine whether Green, a resident of Massachusetts, is subject to personal jurisdiction in New York. See O'Keefe, 634 F. Supp. 2d at 286 (citing Whitaker, 261 F.3d at 209) (additional citation omitted). "If the exercise of jurisdiction is appropriate under [New York's long-arm statute], the court must decide whether such exercise comports with the requisites of due process." O'Keefe, 634 F. Supp. 2d at 286 (quoting Bensusan Rest. Corp. v. King, 126 F.3d 25, 27 (2d Cir. 1997)) (alteration in original); see also Villanova, 2010 WL 1640187, at *3 ("If plaintiff is able to establish a factual predicate for jurisdiction under the laws of the forum state . . . then the court must consider whether the exercise of jurisdiction violates due process."). Where the plaintiff fails to establish a basis for asserting jurisdiction over the defendant, however, the Court need not engage in the constitutional analysis. See O'Keefe, 634 F. Supp. 2d at 286 (citing Best Van Lines, Inc. v. Walker, 490 F.3d 239, 244 (2d Cir. 2007)).

      B.      Long-Arm Jurisdiction – C.P.L.R. 302(a)(1)

New York's long-arm statute provides that a court may exercise personal jurisdiction over any non-domiciliary who inter alia transacts any business within the state or contracts anywhere to supply goods or services in the state. See N.Y. C.P.L.R. 302(a)(1). Pursuant to C.P.L.R. 302(a)(1), a non-domiciliary "transacts business" for purposes of long-arm jurisdiction when he "purposefully avails [himself] of the privilege of conducting activities within [New York], thus invoking the benefit and protections of its laws." CutCo Indus., 806 F.2d at 365 (quoting McKee Elec. Co. v. RaulandBorg Corp., 20 N.Y.2d 377, 382 (1967)); see also Best Van Lines, 490 F.3d at 246. "Courts look to 'the totality of the defendant's activities

7

within the forum,' . . . to determine whether a defendant has 'transact[ed] business' in such a way that it constitutes 'purposeful activity . . .'" Best Van Lines, 490 F.3d at 246 (quoting Sterling Nat'l Bank & Trust Co. of N.Y. v. Fidelity Mortgage Investors, 510 F.2d 870, 873 (2d Cir. 1975)) (alteration in original); see also Morsy v. Pal-Tech, Inc., 07 Civ. 2143, 2008 WL 3200165, at *4 ("Courts look to the totality of the circumstances to determine whether the defendant has engaged in such purposeful activity . . . ."). In addition, courts "require a 'substantial nexus' between the business transacted and the cause of action sued upon." Morsy, 2008 WL 3200165, at *4 (quoting Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp, 98 F.3d 25, 31 (2d Cir. 1996)); see also Best Van Lines, 490 F.3d at 246 ("[A] suit will be deemed to have arisen out of a party's activities in New York if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York."). "[P]roof of one transaction in New York is sufficient to confer jurisdiction [over a nonresident] as long as the activities of the defendant in question were purposeful and there is a substantial relationship between the transaction and the claim asserted." Weil v. American Univ., 07 Civ. 7748, 2008 WL 126604, at *5 (quoting Staten Island Hosp. v. Alliance Brokerage Corp., 560 N.Y.S.2d 859, 861 (2d Dep't 1990)) (second alteration in original).

     Paysafe asserts that jurisdiction over Green is appropriate under C.P.L.R. 302(a)(1) based on his role as an outside consultant to MPG, beginning in September 2016. (AC ¶ 20.) In contrast to its initial Answer and Counterclaims, Paysafe now asserts that Green was never an owner, officer, director, or employee of MPG, but was instead, acting at all times, as an agent of Langer. (Id.) According to Paysafe, in the process of performing that role, Green actively participated in a scheme to fraudulently conceal from Paysafe that Schwed had been embezzling from the company and had been fired as CEO and forced to give up his ownership interest in

8

MPG. Paysafe further argues that as a result of the foregoing, Green transacted business in New York by committing a tort against Paysafe on behalf of MPG.

Paysafe's Amended Counterclaims plead that Green both made fraudulent misrepsentations and simultaneously failed to make required disclosures in telephone conversations, emails and during in-person meetings between September 2016 and April 2017, while present in New York. (AC ¶¶ 119-20, 125, 129-30, 133, 141, 148, 153.) Since Paysafe entered into its Agreement with MPG in June 2016, it is clear that Green is not alleged to have become involved until months after Paysafe began its relationship with MPG. Where a defendant's visit to New York "is not for the purpose of initiating or forming a relationship, but to alleviate problems under a pre-existing relationship, New York courts have declined to assert jurisdiction." Friedman v. Schwartz, No. 08-cv-2801, 2009 WL 701111, at *4 (E.D.N.Y. Mar. 13, 2009) (citing cases). That is precisely what Paysafe alleges to have happened here.

Moreover, "[i]f an individual is sued in his individual capacity, but only had contact with New York as an officer of a corporation acting within the scope of his employment, that individual is not subject to personal jurisdiction in New York." Seaweed, Inc. v. DMA Prod. & Design & Mktg. LLC, 219 F. Supp. 2d 551, 554 (S.D.N.Y. 2002) (citing Kreutter v. McFadden Oil Corp., 71 N.Y.2d 460 (1988)). While Paysafe tries to circumvent this holding by now alleging that Green was never actually the Chief Financial Officer of MPG, but that he was only providing "CFO-like" services – contrary to its initial allegations – as Green points out, it is a distinction without difference. Paysafe is essentially alleging that Green acted in a corporate role for MPG, even if he was not officially named as such. Accordingly, he is not subject to personal jurisdiction for his limited travel to New York.

C. Long-Arm Jurisdiction – C.P.L.R. 302(a)(2)

C.P.L.R. 302(a)(2) provides for the exercise of personal jurisdiction over any foreign defendant who "commits a tortious act within the state." N.Y. C.P.L.R. 302(a)(2). "Section 302(a)(2) has been narrowly construed to apply only when the defendant was actually physically present in New York when he performed the allegedly tortious act." Aaron Consulting Co., LLC v. Snap Solutions LLC, No. 16-CV-6775, 2018 WL 4568800, at *6 (E.D.N.Y. Sept. 24, 2018) (citing Bensusan Rest. Corp., 126 F.3d at 28-29) (additional citation omitted). However, where a conspiracy claim is alleged, "acts committed in New York by the co-conspirator of an out-of-state defendant pursuant to a conspiracy may subject the out-of-state defendant to jurisdiction under C.P.L.R. 302(a)(2)." Chrysler Capital Corp. v. Century Power Corp., 778 F. Supp. 1260, 1266 (S.D.N.Y. 1991). Paysafe asserts that Green is subject to personal jurisdiction based on this co-conspirator theory.

To establish personal jurisdiction under C.P.L.R. 302(a)(2) based upon an allegation of conspiracy, Paysafe must first "make a prima facie factual showing of a conspiracy" and "allege specific facts warranting the inference that [Green was a] member[] of the conspiracy." In re Sumitomo Copper Litig., 120 F. Supp. 2d 314, 338-39 (S.D.N.Y. 2000). A court may draw such an inference based on circumstantial evidence if it is "fair and reasonable" to do so." Best Cellars, Inc. v. Grape Finds at Dupont, Inc., 90 F. Supp. 2d 431, 446 (S.D.N.Y. 2000) (citation omitted).

As discussed in greater detail below, the factual allegations set forth in the Amended Counterclaims are insufficient to demonstrate a prima facie showing of conspiracy with respect to Green. Moreover, for Green to be subject to personal jurisdiction under Section 302(a)(2), Paysafe must demonstrate that Green committed a tortious act in New York "through an agent."

10

Chrysler Capital Corp. v. Century Power Corp., 779 F. Supp. 1260, 1266 (S.D.N.Y. 1991). This requires Paysafe to show that: "(a) the defendant had an awareness of the effect in New York of [his] activity; (b) the activity of the co-conspirators in New York was to the benefit of the out-of-state conspirators; and (c) the co-conspirators acting in New York acted 'at the direction or under the control' or 'at the request of or on behalf of' the out-of-state defendant." Id. at 1268-69 (quoting Dixon v. Mack, 507 F. Supp. 345, 350 (S.D.N.Y. 1980)). For Paysafe to succeed under this theory, it would have to show that Langer – in New York – was acting as an agent of Green – outside of New York. However, Paysafe pleads the exact opposite – that Green is acting as an agent of Langer. (AC ¶ 20.) As such, the allegations against Green fail to provide a basis for exercising personal jurisdiction under C.P.L.R. 302(a)(2).[1]

For the foregoing reasons, this Court respectfully recommends that Green's motion to dismiss for lack of personal jurisdiction be granted and the Amended Counterclaims against him be dismissed in their entirety.

II.   Langer's and Weiler's 12(b)(6) Motions to Dismiss

   A.   Legal Standard

"To survive a motion to dismiss [pursuant to Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Facial plausibility" is achieved when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable of the

---

[1] Since this Court finds that there is no personal jurisdiction over Green pursuant to New York's long-arm statute, it need not reach the issue of whether the exercise of personal jurisdiction would offend due process. See, e.g., Bensusan Rest. Corp., 126 F.3d at 27; Jonas v. Estate of Leven, 116 F. Supp. 3d 314, 334 (S.D.N.Y. 2015); Mangia Media Inc. v. University Pipeline, Inc., 846 F. Supp. 2d 319, 323-24 (E.D.N.Y. 2012)

11

misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). As a general rule, the court is required to accept all of the factual allegations in the complaint as true and to draw all reasonable inferences in the plaintiff's favor. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Town of Babylon v. Fed. Hous. Fin. Agency, 699 F.3d 221, 227 (2d Cir. 2012).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . are not entitled to the assumption of truth." Iqbal, 556 U.S. at 678-79 (citation omitted); see also Twombly, 555 U.S. at 555 (stating that a court is "not bound to accept as true a legal conclusion couched as a factual allegation"). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," which state a claim for relief. Iqbal, 556 U.S. at 679. A complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. Iqbal, 556 U.S. at 678 (quoting Twombly, 555 U.S. at 557).

Paysafe alleges three Amended Counterclaims in this action, only two of which are at issue in the within motion. Paysafe's counterclaim for breach of the Guaranty is asserted against Schwed only, who has not appeared in this action. Weiler and Langer move to dismiss the two Amended Counterclaims asserted against them – for fraud and civil conspiracy – on the ground that they fail to state a claim upon which relief may be granted.

### A. Fraud

Paysafe's first Amended Counterclaim that Weiler and Langer seek to dismiss alleges common law fraud. To state a claim for common law fraud under New York law, a plaintiff must allege facts showing: "(1) a misrepresentation or a material omission of fact which was false and known to be false by defendant, (2) made for the purpose of inducing the other party to rely upon it, (3) justifiable reliance of the other party on the misrepresentation or

12

material omission, and, (4) injury." Premium Mortg. Corp. v. Equifax, Inc., 583 F.3d 103, 108 (2d Cir. 2009) (citations omitted).

In addition, pursuant to Federal Rule of Civil Procedure 9(b), fraud claims must be pled with particularity. See Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). As the Second Circuit has repeatedly held, Rule 9(b) "requires the plaintiff '(1) to specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" Nakahata v. New York-Presbyterian Healthcare Sys., 723 F.3d 192, 197 (2d Cir. 2013) (quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993)) (additional citations omitted). "Conculsory statements and allegations are not enough to meet the Rule 9(b) pleading requirements." Beth Israel Med. Ctr. v. Verizon Bus. Network Servs., No. 11 Civ. 4509, 2013 WL 1385210, at *4 (S.D.N.Y. Mar. 18, 2013) (quoting Musalli Factory for Gold & Jewelry Co. v. JPMorgan Chase Bank, N.A., 382 Fed. Appx. 107, 108 (2d Cir. 2010)).

The plaintiff must also "allege facts that give rise to a strong inference of fraudulent intent." Nakahata, 723 F.3d at 198 (quoting First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 175 (2d Cir. 2004)). "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994) (citing cases).

Weiler and Langer both argue that Paysafe has failed to plead fraud with particularity, as required by Rule 9(b). The Court agrees. Despite the voluminous Amended Answer and

13

Counterclaims submitted by Paysafe, the allegations contained therein fare no better this time around than they did on the first motion to dismiss. Despite the caution communicated by both this Court and the District Court, Paysafe still fails to specify who made the fraudulent statements, what the contents of those statements were, where the statements were made, or when they were made. Such a lack of specificity is fatal to a fraud claim. See Beth Israel Med. Ctr., 2013 WL 1385210, at *4.

For example, the Amended Counterclaims conclusorily allege that Langer "knew that withholding from Paysafe the information that Schwed was no longer the majority owner of MPG, had been fired as CEO, and had embezzled $1 million from MPG was necessary for Paysafe to continue making payments of the advance, upfront bonuses, and any other amounts to MPG." (AC ¶ 80.) This exact allegation is repeated verbatim with respect to Weiler. (Id. ¶ 81.) Similarly, the Amended Counterclaims allege that Langer "knew that there was approximately $1 million remaining to be paid on the $1.5 million advance as of September 19, 2016." (Id. ¶ 110.) Again, the exact same allegation is repeated verbatim with respect to Weiler. (Id. ¶ 111.) However, the Amended Counterclaims fail to allege any facts to support the conclusion that Langer and Weiler would have known this information. Rather, the Amended Counterclaims simply conclude information attributed to Langer and Weiler without demonstrating how the individuals were in possession of such information. See Alnwick v. European Micro Holdings, Inc., 281 F. Supp. 2d 629, 640 (E.D.N.Y. 2003) ("[C]onclusory allegations that defendant's conduct was fraudulent or deceptive are not enough.").

Paysafe attempts to cover up its lack of particularity by citing to a plethora of alleged communications between Weiler and unnamed individuals at Paysafe, by both telephone and email. (AC ¶¶ 124, 128.) Paysafe also lists numerous in-person meetings that took place between

Weiler and unnamed individuals at Paysafe. (Id. ¶ 130.) However, notably absent from these allegations are any specific misrepresentations made by Weiler about Schwed's conduct during all of these communications. Rather, Paysafe simply alleges that Weiler "made false representations to Paysafe that Schwed was still CEO of MPG and remained its majority owner." (Id. ¶ 137.)

Paysafe further alleges that Langer and Weiler "directed Schwed to misrepresent to Paysafe during his phone communications that Schwed was still serving as CEO of MPG and was its majority owner." (Id. ¶¶ 144-47.) However, there is absolutely no factual support provided for these conclusory allegations, rendering them insufficient under Rule 9. See, e.g., PetEdge, Inc. v. Garg, 234 F. Supp. 3d 477, 493 (S.D.N.Y. 2017) (finding unsubstantiated allegations that fraud was committed "at [defendant's] direction" and "with his knowledge and approval" to be conclusory and insufficient); In re NQ Mobile, Inc. Sec. Litig., No. 13-cv-7608, 2015 WL 1501461, at *2 (S.D.N.Y. Mar. 27, 2015) (describing allegations that one defendant performed audit services "on the authority of, at the direction of, under control of, and for the sole benefit of" another defendant as "conclusory allegations" with "no facts to substantiate them"); SIPC v. Bernard L. Madoff Inv. Sec. LLC, 546 B.R. 284, 301-02 (Bankr. S.D.N.Y. 2016) (finding allegations that a party "cause," "directed" and "participated in" fraudulent conduct to be "entirely conclusory").

Paysafe also alleges that Langer repaid the monies that Schwed embezzled from MPG but that he "directed that MPG's financial records be altered to hide that embezzlement." (AC ¶ 98.) Again, this constitutes a conclusory allegation for which no factual support is provided.

In addition, Paysafe again fails to differentiate between Weiler and Langer, simply attributing all of the alleged fraudulent misrepresentations and omissions to both individuals.

15

"Rule 9(b) is not satisfied where the complaint vaguely attributes the fraudulent statements to 'defendants.'" Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993) (citation omitted). In an attempt to get around this deficiency highlighted by the Court on the first motion to dismiss, Paysafe now simply repeats each allegation verbatim with respect to both Langer and Weiler. This is no different than the original Counterclaims in which Paysafe attributed all misconduct to all defendants generally. Paysafe still fails to differentiate among the individual counterclaim-defendants with respect to who committed what misconduct. Instead, each individual is alleged to have committed the same identical misconduct. Such pleading fails to comply with Rule 9. See Alnwick, 281 F. Supp. 2d at 640 ("Where there are multiple defendants, Rule 9(b) requires that the plaintiff allege facts specifying each defendant's contribution to the fraud.").

Finally, Paysafe continues to improperly rely on unexplained "information and belief" as the basis for a number of its allegations. For example, Paysafe's allegations that Langer and Weiler directed Schwed to make unspecified misrepresentations to Paysafe are pleaded "[u]pon information and belief." (AC ¶¶ 450.) The allegations that Langer and Weiler each "knew that the facts that Schwed had engaged in fraudulent conduct, had been fired as CEO of MPG because he had embezzled funds, and had transferred all ownership interest in the company to Langer were all material facts that would have been of significant interest to Paysafe" is similarly pleaded "[u]pon information and belief." (Id. ¶ 452.) Additional allegations pleaded "[u]pon information and belief" are found at Paragraphs 454, 460, 461, and 462 of the Amended Counterclaims.

"[F]raud pleadings generally cannot be based on . . . belief." Simmons v. Nationstar Mortgage, No. 20-CV-1066, 2021 WL 950022, at *4 (E.D.N.Y. Mar. 12, 2021 ) (quoting Stern

16

v. Leucadia Nat'l Corp., 844 F.2d 997, 1003 (2d Cir. 1988)); see also Granite Partners, L.P. v. Bear, Stearns & Co., Inc., 17 F. Supp. 2d 275, 288 (S.D.N.Y. 1988) (same). Rather, in the limited exceptions where fraud allegations are permitted to be pleaded on information and belief, "the factual basis for plaintiffs' information and belief must be pleaded with particularity." Attick v. Valeria Assocs., 835 F. Supp. 103, 110 (S.D.N.Y. 1992) (citing Wexner v. First Manhattan Co., 902 F.2d 169, 172 (2d Cir. 1990)). "Where pleading is permitted on information and belief, a complaint must adduce specific facts supporting a strong inference of fraud or it will not satisfy even a relaxed pleading standard." Wexner, 902 F.2d at 172. For all of the reasons set forth above, the Amended Counterclaims fail to meet this burden.

Based on the foregoing, this Court finds that Paysafe fails to state a claim for fraud and respectfully recommends that Weiler's and Langer's motions to dismiss the amended fraud counterclaim be granted.[2]

### B. Civil Conspiracy

Weiler and Langer also seek to dismiss Paysafe's counterclaim for civil conspiracy. "New York, however, does not recognize a substantive tort of civil conspiracy." Payday Advance Plus, Inc. v. Findwhat.com, Inc., 478 F. Supp. 2d 496, 506 (S.D.N.Y. 2007) (citing Antonios A. Alevixopoulos & Assocs. v. Comcast Int'l Holdings, Inc., 100 F. Supp. 2d 178, 187 (S.D.N.Y. 2000)). Rather, a claim of civil conspiracy in New York requires "allegations of an independent intentional tort." Payday Advance Plus, 478 F. Supp. 2d at 506 (citing Agron v. Douglas W. Dunham, Esq. & Assocs., No. 02 Civ. 10071, 2004 WL 691682, at *6 (S.D.N.Y. Mar. 31, 2004)) (additional citation omitted).

---

[2] Because the Court finds that the amended fraud counterclaim is not properly pled, there is no need to reach the merits of the fraud claim.

Accordingly, to state a claim for civil conspiracy under New York law, "a plaintiff must allege an underlying tort, as well as the following elements: '(1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury.'" Homere v. United States Small Bus. Admin., 347 F. Supp. 3d 147, 169 (E.D.N.Y. 2018) (quoting Bigio v. Coca-Cola Co., 675 F.3d 163, 176 (2d Cir. 2012)) (additional citation omitted). Where, as here, a civil conspiracy claim is based on an underlying fraud claim, the failure to plead fraud with particularity is also fatal to the civil conspiracy claim because the requirement to allege an underlying tort is not met. See Payday Advance Plus, 478 F. Supp. 2d at 507. Accordingly, Paysafe has failed to adequately plead a civil conspiracy claim in its Amended Counterclaims and, as such, Weiler and Langer's motions to dismiss should be granted with respect to the amended counterclaim for civil conspiracy.

III.     Leave to Amend

This Court respectfully recommends that the dismissal of Paysafe's Amended Counterclaims be with prejudice. Paysafe has already been afforded one opportunity to amend its counterclaims. Further, Paysafe was explicitly cautioned by both this Court and the District Court that amendment should only be attempted if it had additional factual matters that would cure the deficits identified by this Court. Paysafe failed to heed this warning and instead attempted to repackage its original counterclaims in a more voluminous filing. Permitting Paysafe to amend its counterclaims a second time would simply be futile as it is clear that no amount of re-pleading will cure the deficits this Court has now identified for the second time. Accordingly, this Court recommends that Paysafe's Amended Counterclaims be dismissed with prejudice.

RECOMMENDATION

For the foregoing reasons, this Court respectfully recommends that Counterclaim-Defendant Green's motion to dismiss for lack of personal jurisdiction be granted. The Court further recommends that Counterclaim-Defendants Weiler's and Langer's motions to dismiss Paysafe's amended fraud and civil conspiracy counterclaims be granted and that the Amended Counterclaims be dismissed with prejudice.

OBJECTIONS

A copy of this Report and Recommendation is being provided to all counsel via ECF. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of filing of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals. Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision").

**SO ORDERED:**

Dated: Central Islip, New York
       March 2, 2022                               /s/      Anne. Y. Shields
                                                   ANNE Y. SHIELDS
                                                   United States Magistrate Judge

19